887 F.2d 1095
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Beth HALPERIN, Petitioner,
v.
DEPARTMENT OF the AIR FORCE, Respondent.
 No. 89-3075.
 United States Court of Appeals, Federal Circuit.
 Sept. 21, 1989.
 
 Before PAULINE NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.
 SKELTON, Senior Circuit Judge.
 
 Decision
 
 1
 The petitioner (appellant) Beth Halperin appeals from a decision of the Merit Systems Protection Board (MSPB) in Docket No. DE07528810143 sustaining the action of the Department of the Air Force in removing appellant from her job as a Military Personnel Technician, GS-7, at Hill Air Force Base, Utah, on the following charges: (1) deliberate misrepresentation, (2) falsification of a material fact in connection with an official document, and (3) negligence, with an attempt to conceal defective work. We affirm in part, reverse in part, and remand.
 
 Opinion
 
 2
 The facts as stated by the administrative judge (AJ) who tried the case are as follows, with certain changes, omissions and additions.
 
 
 3
 Appellant was employed at Hill Air Force Base as a Military Personnel Technician, GS-7, in the military branch of the Base's Directorate of Personnel (DPMQE). Appellant was responsible for processing and forwarding appeals from Officer Effectiveness Reports (OER) and Airman Performance Reports (APR) to the appropriate office.
 
 
 4
 An officer or airman dissatisfied with an OER or APR could formally request that parts or all of the OER or APR be changed, disregarded or deleted. These requests, filed on an Air Force Form 948 are forwarded, via an Air Force Form 330, to the appropriate office for evaluation and action. That office uses the acronym HQ AFMPC/DPMAJA2 (MPC), and is located at Randolph Air Force Base, Texas.
 
 
 5
 Appellant was responsible for receiving the OER and APR appeals on the AF 948, attaching the transmittal AF 330 and forwarding the documents for further action to MPC. When an AF 948 is processed through DPMQE, the appeal, along with a copy of the AF 330 transmitting the appeal, is retained in appellant's office. These copies are placed in a suspense file and checked at the end of 30 days to assure prompt action. Prompt action is often required because the personnel filing the appeals are usually facing promotion boards. And, failure to make promotion might result in discharge.
 
 
 6
 On November 13, 1987, Major Richard C. Besteder and Sergeant Susan Moore contacted appellant's office, DPMQE, regarding the status of their appeals. Appellant was not in the office at the time, and her supervisor, Captain Phyllis Mannion, was unable to find any record of the appeals in the suspense files. Captain Mannion, who knew Major Besteder on a personal basis, could not recall having seen or signed his AF 948. Captain Mannion informed Major Besteder and Sergeant Moore that the status of their appeals would be determined as soon as appellant could be contacted.
 
 
 7
 On Monday morning, November 16, Captain Mannion reported for duty at about 7:00 a.m. and asked appellant (who was to go off duty at 8:00 a.m.) to look for Major Besteder's and Sergeant Moore's files. Appellant was unable to find the AF 948 and AF 330 for either appeal and informed Captain Mannion that the documents had been misfiled and that appellant would find them on her next tour of duty.
 
 
 8
 Later on November 16, Captain Mannion called CMSgt. Ronald Badour, Non-Commissioner Officer in Charge (NCOIC), at MPC to determine the status of the appeals. Sergeant Badour informed Captain Mannion that he could find no record of appeals ever being filed by Major Besteder or Sergeant Moore.
 
 
 9
 Appellant testified that on October 8 she phoned Badour's office at MPC and said she wanted to inquire about the status of a pending case that she had sent in. She said she did not have a chance to give any names, when she was told that they had a backlog and it was going to take longer to process cases. It was a short conversation. Badour testified that neither he nor anyone else in his office talked to appellant that day. However, he admitted on cross-examination that it was possible that someone in his office talked to appellant and he did not know about it.
 
 
 10
 On Tuesday, November 17, Captain Mannion found AF 948s and AF 330s for Major Besteder and Sergeant Moore on her desk. The AF 948 for Sergeant Moore contained the note: "8 Oct 87 ... cases are taking longer because they are really stacked up." The note was initialed by appellant.
 
 
 11
 Captain Mannion noticed that the AF 948s, which she was required to sign, were stamped "signed" rather than actually signed. After receipt of the documents for Major Besteder and Sergeant Moore on the 17th, Captain Mannion again contacted Sergeant Badour at MPC to verify that the address on the documents was the correct address for MPC. Sergeant Badour verified that it was the correct address. Captain Mannion then wrote a letter to Sergeant Badour requesting expedited processing of the two matters. She enclosed copies of the 948s for Besteder and Moore.
 
 
 12
 Appellant testified that Captain Mannion and her superior, Captain James Playford, sometimes signed the OERs and at other times initialed them or stamped their signatures. Mannion and Playford said they never used a stamp for their signatures. However, appellant proved that Mannion's name was stamped on the notice to remove her, and Playford's name was stamped on his decision to remove. Their initials were also on these documents. They testified that these documents were prepared in the personnel office and not by them. However, they were processed through their offices with their stamped names on them and with their initials adjacent to the stamps. An examination of the copies of the 948s in the record, and the notice to remove, and the decision to remove with the word "stamped" on them indicate that they were all stamped with the same stamp, or by identical ones.
 
 
 13
 The situation of Major Richard Wahl was slightly different. Major Wahl had submitted an OER appeal on October 1 or 2, 1987, and was facing a Lt. Colonel promotion board on November 30, 1987. However, Major Wahl had requested only that a typographical error be changed on his OER. This appeal had been forwarded through MPC to Headquarters, Tactical Air Command (HQ/TAC) at Andrews Air Force Base, Maryland.
 
 
 14
 Major Wahl contacted MPC directly on November 17, regarding the status of his appeal, and when MPC could find no record of the appeal, Major Wahl contacted Captain James Playford, appellant's second-line supervisor. Pursuant to this contact, Captain Playford asked Captain Mannion to determine the status of Major Wahl's appeal. Captain Mannion again searched pertinent areas of the office on November 17, but could find no evidence of Major Wahl's AF 948 appeal or the AF 330 transmittal and left Captain Playford's inquiry on her desk, intending to speak to appellant about it on the morning of the 18th.
 
 
 15
 The next morning, Captain Mannion found a note from appellant on her desk. The note, referring to Major Wahl's appeal, read, in pertinent part: "I called on it and was told it was good to go and to file it in his UPRG so I fixed this copy for his records." Appellant said that she found the copies of the AF 948 and AF 330 for Major Wahl and placed them on her desk. However, the documents disappeared from appellant's desk, and have not been seen since. Appellant said that she had mailed the originals to MPC.
 
 
 16
 After receipt of appellant's note, Captains Mannion and Playford asked appellant--still on the morning of the 18th--whom she had contacted in HQ/TAC. Appellant replied that she had contacted a TSgt. Gordon Millett. Captain Playford then contacted Sergeant Millett's office to confirm that Major Wahl's appeal had been resolved, and learned that Sergeant Millett had not spoken to appellant on that morning. Shortly thereafter, Captain Playford again called Sergeant Millett and had Sergeant Millett ask the other persons in his office if they had talked to appellant on the morning of the 18th. Every staff member indicated that they had not talked to appellant. However, on cross-examination Millett admitted that it was possible someone in his office talked to appellant, and he did not know about it. Appellant testified at the hearing that she did not mean to say that she had talked to Sergeant Millett on the 18th. Rather, she talked to someone else in Sergeant Millett's office, but did not identify herself or get the name of the person to whom she was speaking. She did not mention Major Wahl's name. She explained that she did not call TAC to request the status of his correction, but only to ask a general question as to whether or not once the correction was made was she supposed to keep the OER in suspense or was it supposed to be put immediately into his records. She was told to put it into his records--that once it was corrected it was ready to go into his records (his UPRG).
 
 
 17
 The appellant denied in her oral reply to the charges that, except for misfiling the three files, she was guilty of the offenses charged. On January 11 she again denied any wrongdoing by saying in a written reply to the charges that she made "no deliberate attempt to falsify or mislead management as to the processing of the [AF] 330s," and that the problems stemmed from either "simple negligence or misrouting or misfiling of the documents." She admitted misfiling the three files, but denied at every stage of the proceeding that she had committed the other acts charged. Throughout her hearing testimony, she strenuously denied that she had committed any wrongful act. She claimed rather, that she properly mailed the originals of all three appeals to MPC. She only acknowledged that she misfiled the copies of the AF 948s and AF 330s. She claimed that all three appeal packages were lost in the mail. She and three other witnesses testified that the mail service between her office and MPC was poor and cited instances of lost mail.
 
 
 18
 Appellant designated Tom Montez, a Union member to represent her in the initial stages of this proceeding and up to the time of the hearing. He was not an attorney but was a carpenter. It is obvious from the part he played in the case that he was ineffective in representing appellant, and that he was clearly unskilled and untrained in filing a reply to the charges and in perfecting an appeal to the MSPB. For instance, in his attempt to reply to the charges he filed a six-page document (the Union letter), which was more of a brief and petition for the Union than a reply of appellant to the charges. As shown below, he made statements that were damaging to appellant's defense and were a disservice to her. These statements were as follows:
 
 
 19
 The Union's position is that the employee is entitled to progressive discipline, that is that management should impose the lessor penalty instead of automatically jumping to the most severe penalty.
 
 
 20
 The Union's position is that the alleged deficiencies can be corrected through training or other forms of rehabilitation.
 
 
 21
 Ms. Halperin has been an employee of the U.S. Government for over 20 years, surely her skills and loyalty can be salvaged. Ms. Halperin can be useful and can be beneficial to assist the agency in accomplishing the mission.
 
 
 22
 Also, bear in mind that Ms. Halperin has no prior discipline on her records and should be treated as a first offender.
 
 
 23
 Accordingly, the Union requests that the proposed discipline be reversed and expunged from the record and that the agency impose a lessor penalty to correct and rehabilitate the offender.
 
 Respectfully submitted, /s/ Tom Montez
 Tom Montez
 Representative
 AFGE Local 1592
 
 24
 sw
 
 
 25
 (Emphasis Supplied)
 
 
 26
 It will be noted that he repeatedly stated "the Union's position is" as if he was only representing the Union. This is further indicated in the last paragraph when he said "the Union requests," etc. He signed the document as a representative of the Union and not as appellant's representative. The appellant did not sign the document, and testified that she did not authorize Montez to make the above statements, and did not know he was making them. The AJ held that these statements could be considered an admission of guilt and a plea for leniency by appellant. This was directly contrary to the position that appellant took throughout the proceedings.
 
 
 27
 As pointed out by the AJ, a party is bound by the acts of his representative or his attorney. However, in this case, where Montez was clearly representing the Union instead of appellant, it is our view that the rule should not apply.
 
 
 28
 Montez further damaged appellant's position when he prepared her appeal form to the MSPB and inserted the following sentence:
 
 
 29
 The removal action was excessively harsh and unreasonable considering the fact that there are no other aggravating circumstances and this is the employee's first infraction of Air Force Regulations" (emphasis in the original).
 
 
 30
 Appellant testified that Montez prepared the appeal form, and she signed it without realizing what was in it. She said she thought the only purpose of the form was to give notice to the agency and the MSPB that she was appealing her case. The AJ held this statement against appellant, and said it was an admission of guilt or a statement against interest. When appellant contradicted it he found her to be incredible and found Captains Mannion and Playford credible.
 
 
 31
 At the hearing appellant contended through her attorney (at this stage she had hired an attorney and dispensed with the services of Montez) that the documents filed by Montez were ambiguous, and tendered Montez as a witness to explain their meaning. The AJ refused to allow Montez to testify. In this, the AJ erred. The documents were indeed ambiguous. In reading them, one cannot tell whether the statement in the appeal form, and the statements in the Union letter were meant to refer only to the charge of misfiling the three files in which appellant admitted her guilt, or whether they were meant to refer to all of the charges. Also, it is not clear whether the statements in the Union letter were meant to be an alternate position to be applicable only in case appellant was found guilty of the charges. It is well established that where a written document is ambiguous, it is proper to allow the maker to testify and explain its meaning.
 
 
 32
 After the hearing, the AJ made the following factual findings:
 
 
 33
 I believe it more likely true that the following happened: (1) Appellant received the appeals (AF 948s) from Majors Wahl and Besteder and Sergeant Moore but, through her own negligence, misfiled them; (2) appellant did not realize this mistake until she was asked to find the AF 948s and AF 330s on the three appeals; (3) after a thorough search, appellant was able to find the documents; (4) appellant used the "signed" stamp on Major Besteder's and Sergeant Moore's AF 948s; (5) appellant added the note on Sergeant Moore's AF 948 as if she had made the suspense date check; (6) appellant made copies of the documents; (7) appellant destroyed the original AF 948s so that they would not be found and so it would appear as if she had mailed them; (8) appellant gave the copies of the documents to Captain Mannion, thus, implying that the originals had been mailed; and (9) appellant made the minor correction on Major Wahl's appeal--an essentially pro forma matter--and attempted to cover this action by claiming that she had contacted HQ/TAC.
 
 
 34
 This is an interesting scenario, but the trouble with it is that most of it is pure speculation, and not supported by the evidence. We consider these findings in the order listed above: Finding no. (1) is true and was proven by a preponderance of the evidence. Appellant admitted that she received the three files from Wahl, Besteder and Moore and negligently misfiled them. This finding is supported by substantial evidence.
 
 
 35
 The second and third findings ((2) and (3)) are true, but they do not relate to separate charges but actually supplement finding no. (1).
 
 
 36
 Finding no. (4) that appellant placed the "signed" stamp on Major Besteder's and Sergeant Moore's AF 948s was not proven by a preponderance of the evidence. Appellant denied that she placed a stamp on these 948s. She testified that Mannion sometimes signed the 948 forms and at other times she used a stamp or placed her initials on the forms. Mannion, and her superior, Captain Playford, both testified that they never used a stamp for their signatures. However, this testimony was disproved by the record which contains a copy of the letter notice from Mannion to remove appellant which bears a stamp for her signature, and with her initials adjacent to the stamp. The record also contains a copy of the removal decision by Playford which bears a stamp for his signature with his initials alongside it. Both Mannion and Playford testified that these documents were prepared for them by the Bureau of Personnel. However, they did not testify that the Bureau placed the stamps on the letters, nor that they had not done so themselves. They admitted that they placed their initials on the letters adjacent to the stamps, thereby approving the use of the stamps. They also processed these letters through their offices with their names stamped thereon, which was a "use" of the stamp for their signatures. This physical documentary evidence flatly contradicted their testimony that they never used a stamp for their signatures.
 
 
 37
 It will be recalled that the AJ found that Mannion and Playford were credible. The above evidence refutes this finding insofar as it relates to the use of a stamp for their signatures. While it is true that a finding on credibility by a trial judge is usually binding on an appellate court, this is not an inflexible rule, and is not enforced where documentary or physical evidence shows that the credibility finding is discredited by undisputed fact. That is the situation here with reference to the stamp issue. See Grubka v. I.R.S., 858 F.2d 1570, 1574 (Fed.Cir.1988).
 
 
 38
 As to the charge that appellant placed the stamps on the 948s for Mannion's signature, there is no evidence whatever that she did so. There was no one who saw her do it, and there is no documentary evidence that proves it. She testified she did not stamp the forms. In the absence of evidence to the contrary, the government has failed to carry its burden of proof on this issue.
 
 
 39
 We hold that finding no. (4) is not supported by substantial evidence.
 
 
 40
 Finding no. (5) has two parts. The first part states that appellant added the note on Sergeant Moore's 948. This is true and was admitted by appellant. Actually, the note bore her initials. However, the placing of the note on the 948 is not a punishable offense. The second part of the finding stating "as if she had made the suspense date check" is pure conjecture and speculation by the AJ. We hold that this part of finding no. (5) is not proven by a preponderance of the evidence, and is not supported by substantial evidence.
 
 
 41
 Finding no. (6) that appellant made copies of the documents [after they had been misfiled and later found] was not proven by a preponderance of the evidence. There was no testimony or other evidence whatever in the record that supports this finding. We hold that this finding is not supported by substantial evidence.
 
 
 42
 Finding no. (7) that appellant destroyed the original AF 948s so that they would not be found, and so it would appear as if she had mailed them, was not proven by a preponderance of the evidence. There is no evidence at all that appellant destroyed these documents. She testified that she mailed them to MPC and they were lost in the mails. Mannion confirmed this in a letter she wrote to MPC on November 17, 1987, when she said "they [the original 948s] were evidently lost in the mails." She added a note in her handwriting on the letter saying she had contacted Besteder and Moore and informed them that "we resubmitted both [appeal] packages on 11 Nov 1987." This confirms the fact that appellant had previously mailed them. There was no noncircumstantial evidence that appellant did not mail them. The rest of finding no. (7) is more speculation and guesswork by the AJ. We hold that this finding is not supported by substantial evidence.
 
 
 43
 As to finding no. (8), the statement, "thus, implying that the originals had been mailed" was speculation and assumption by the AJ that the originals had not been mailed. This was not proven by a preponderance of the evidence, and is not supported by substantial evidence. Appellant's testimony that she mailed the originals to MPC was not disproven by any evidence.
 
 
 44
 Finding no. (9) states that appellant made the minor correction on Major Wahl's appeal--an essentially pro forma matter--and attempted to cover this action by claiming that she had contacted HQ/TAC. This is an imaginative and theoretical finding by the AJ that is not supported by any evidence. As stated supra, appellant explained that she had called the office of TAC without identifying herself or Wahl, and talked to an unnamed person and asked a general question as to what she should do with the copy of a file that had been corrected. She was told to put it in his personnel record (his UPRG), and not to hold it in suspense. Officer Millett, who was in charge of TAC, testified that he had not talked to appellant, but admitted that she could have talked to someone else in his office without his knowing about it.
 
 
 45
 We hold that finding no. (9) was not proved by a preponderance of the evidence and is not supported by substantial evidence.
 
 
 46
 In sum, the only finding that was proven by a preponderance of the evidence, and that is supported by substantial evidence, is finding no. (1) that appellant negligently misfiled the AF 948s of Majors Besteder and Wahl and Sergeant Moore.
 
 
 47
 This brings us to the question of the penalty that should be imposed on appellant for this negligent unintentional misfiling. The facts show that copies of the 948s were timely retransmitted to MPC, and they were duly processed according to the appropriate regulations, all without injury or damage to the appeals of Besteder, Wahl and Moore. Also, the record shows that appellant had 20 years of superior service with the government, and had received many commendations, outstanding appraisals, and even monetary awards for her sustained superior service. The misfiling of only three files during 20 years of service appears to be a minor infraction and is de minimus. No doubt many secretaries would be glad to have a record that good. In any event, the penalty of removal from her job for this minor infraction is so severe, unreasonable, harsh and disproportionate to the offense involved, that we cannot allow it to stand, and it is set aside.
 
 
 48
 Accordingly, the decision of the board that appellant negligently misfiled the files of Majors Besteder and Wahl and Sergeant Wahl is affirmed, and its decision on all of the other findings is reversed. The case is remanded to the board with instructions to restore appellant to her job, with back pay and other benefits to which she is entitled, and for a determination of a penalty less than removal for appellant's negligent misfiling of the three mentioned files.
 
 
 49
 Affirmed in Part and Reversed In Part and Remanded